UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>LIDINGO HOLDINGS, LLC, *et al.*,<br><br>Defendants. | Case No. C17-1600 RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendants Lidingo Holdings, LLC's, Kamilla Bjorlin's and Andrew Hodge's (collectively "Lidingo Defendants") Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), in which Defendant Brian Nichols has also joined. Dkts. #66 and #68. Defendants seek dismissal of all claims against them on the basis that they are time-barred. *Id.* Alternatively, Defendants argue that certain of Plaintiff's claims should be dismissed for the failure to adequately plead facts supporting the elements of those claims. Dkts. #66 at 11-18 and #68 at 3-12. Plaintiff opposes the motion, asserting that its claims are not time-barred, and that, even if some claims are barred against Defendant Lidingo, it has adequately pled its claims against the individual Defendants. Dkt. #69. Having reviewed the record before it, and neither party having requested oral argument on the motions, the Court now GRANTS IN PART AND DENIES IN PART Defendants' motions for the reasons discussed herein.

ORDER
PAGE - 1

## II. BACKGROUND

Plaintiff initially filed its Complaint in this matter in the United States District Court for the Southern District of New York. Dkt. #1. The matter was subsequently transferred to this Court on October 27, 2017. Dkt. #53. According to the parties:

> Following an investigation, the SEC filed this action under the antifraud and antitouting provisions of the federal securities laws alleging Defendants Lidingo Holdings, LLC ("Lidingo"), Kamilla Bjorlin ("Bjorlin"), Andrew Hodge ("Hodge"), Brian Nichols ("Nichols"), and Vincent Cassano ("Cassano") engaged in a scheme to promote the stock of public companies without disclosing compensation they received for the promotion directly or indirectly from the issuers, and in many instances, by falsely stating they had received no compensation at all.
>
> The SEC has charged Defendants with violating Sections 17(a) and 17(b) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77q(a) and 77q(b); and Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Defendants have responded with numerous defenses to the counts raised.

Dkt. #61 at 1-2. Defendant Cassano has since been dismissed from this action. Dkt. #72. The instant motions to dismiss are ripe for review.

## III. DISCUSSION

### A. Standard of Review

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the

ORDER
PAGE - 2

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Absent facial plausibility, Plaintiff's claims must be dismissed. *Twombly*, 550 U.S. at 570.

Though the Court limits its Rule 12(b)(6) review to allegations of material fact set forth in the Complaint, the Court may consider documents of which it has taken judicial notice. *See* F.R.E. 201; *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). The Lidingo Defendants have asked the Court to take judicial notice of business entity documents and a Form 10-K of Galena Biopharma, Inc. for the period ending December 31, 2013. Dkts. #66 at 20-22 and #67, Exs. A and B. The Court finds it unnecessary to consider those documents to resolve this matter, and declines Defendants' request on that basis. However, the Court does take judicial notice that Lidingo Holdings, LLC, with registered agent Kamilla Bjorlin, was formerly registered to do business in the State of Washington, but is now terminated. This information is contained in the public records maintained by the Secretary of State of the State of Washington, and can be retrieved on the public website for the Secretary of State of the State of Washington Corporations division. https://www.sos.wa.gov/corps/ (*last visited* May 9, 2018).

**B. Time-Bar**

Defendants first move to dismiss all of Plaintiff's claims on the basis that they are time-barred pursuant to Nevada law. Dkts. #66 at 8-11 and #68 at 2-3. Defendants rely on Nevada Revised Statutes ("NRS") § 86.505(1) pertaining to dissolved corporations. *Id.* Plaintiff, relying on *U.S. v. Summerlin*, 310 U.S. 414, 417, 60 S. Ct. 1019, 1020, 84 L. Ed.1283 (1940), asserts that when it brings claims in its governmental capacity, it cannot become subject to any state statute of limitations. Dkt. #69 at 14. While acknowledging the general rule, this Court disagrees that it is applicable in this case.

ORDER
PAGE - 3

In *Williams v. United States*, 674 F. Supp. 334 (1987), the United States District Court for the Northern District of Florida examined a Florida statute with nearly identical language to that of the Nevada statute, to determine whether the statute constituted a statute of limitations. The Court started by recognizing the general principle that Plaintiff asserts in this case – as a general rule, the United States is not bound by state statutes of limitation. *Williams*, 674 F. Supp. at 336. The court went on to determine, however, that the statute was a "prolongation" statute rather than a statute of limitations:

> A statute of limitations is one that prescribes a period of time within which a civil action must be commenced . . . ., the "limitation" being the time at the end of which no action can be maintained. 35 Fla. Jur. 2d, Limitations and Laches, S.1. Put another way, a "statute of limitation" is but the action of the state in determining that, after the lapse of a specified time, a claim shall not be legally enforceable. *State of South Dakota v. State of North Carolina*, 192 U.S. 286, 24 S. Ct. 269, 48 L. Ed. 448 (1904).
>
> In determining whether Section 607.297, Florida Statutes, is a statute of limitation, the court will first examine the plain language of the statute and then consider the gloss placed upon the statute by the Florida courts.
>
> Section 607.297, which is entitled "Survival of remedy after dissolution," states in part that, "The dissolution of a corporation . . . shall not take away or impair any remedy available . . . against such corporation, or its directors . . . . for . . . any liability incurred, prior to such dissolution . . . if action . . . is commenced within 3 years . . . ." It is apparent that the Florida legislature intended Section 607.297 to extend the time in which a claim against a dissolved corporation could be brought. This court must presume that the legislative purpose is expressed by the ordinary meaning of the words used and that the language must be regarded as conclusive. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S. Ct. 1534, 71 L. Ed. 2d 748 (1982). The cause of action is not barred, but rather, the remedy survives the dissolution of the corporation.
>
> This is in sharp contrast to the effect of a typical statute of limitation where the substantive right continues to exist, but its enforcement is cut off. A statute of limitation bars the remedy after the passage of a prescribed amount of time. *Henry v. Halifax Hospital Dist.*, 368 So.2d 432, 433 (Fla. 1st DCA 1979); *Walter Denson & Son v. Nelson*, 88 So.2d 120, 122 (Fla. 1956); *Hoagland v. Railway Exp. Agency*, 75 So.2d 822, 827 (Fla. 1954).

> Section 607.297 not only does not act as a bar to an action, it actually creates a remedy where one did not exist. Prior to the passage of Section 607.297, the common law rule was that after the dissolution and termination of a corporation, no action could be maintained against it. *Marinelli v. Weaver*, 208 So.2d 489, 492 (Fla. 2nd DCA 1968); *Nelson v. Miller*, 212 So.2d 66, 67 (Fla. 3rd DCA 1968); *Bahl*, 423 So.2d at 965. The common law rule still controls after the passage of the three years prescribed in the statute. *Fedonics West Hollywood Corp. v. Barnett Bank*, 450 So.2d 322, 324 (Fla. 4th DCA 1984).
>
> In addition, the Florida courts have not described nor treated Section 607.297 as a statute of limitation. A corporation "continued as a body corporate" in order to satisfy its liabilities. *Air Control Products, Inc. v. Perma-Stress, Inc.*, 189 So.2d 412, 414 (Fla. 1st DCA 1966) (construing prior law, Florida Statutes, Section 608.30(1)). Section 607.297 has been described as a "winding up" statute, one which extends the life of a dissolved corporation. *McGlynn v. Rosen*, 387 So.2d 468, 469 (Fla. 3rd DCA 1980), *Advance Machine Co. v. Berry*, 378 So.2d 27, 28 (Fla. 3rd DCA 1978). The statute provides for a three year "grace period." *Fedonics*, 450 So.2d at 324.
>
> Additional evidence that Section 607.297 was not intended to be a statute of limitation is its placement in Florida's statutory scheme. The statute at issue is part of the Florida General Corporation Act, Section 607.001 *et seq*. Chapter 95 of the Florida Statutes contains the limitations of actions provisions.
>
> This court is of the opinion that Florida Statutes, Section 607.297 is, as described by the third party defendant, a "prolongation statute" and not a statute of limitation. The general rule that the United States is not subject to state statutes of limitation is not applicable here, and the United States claim against the third party defendant may not proceed.

*Williams*, 674 F. Supp. at 336-37.

Neither the Ninth Circuit Court of Appeals nor any District Court in the Ninth Circuit has addressed the same question with respect to the Nevada statute at issue here.[1] However, the Court finds the reasoning in *Williams*, *supra*, persuasive in this case. First, the language of the

---

[1] The Ninth Circuit Court of Appeals has examined Washington's statute regarding dissolved corporations, which contains similar language, and found that the applicable provision was not a statute of limitations, but rather a statute regarding the capacity to be sued. *See Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431 (9th Cir. 1993), *superseded in part, on other grounds, by amended Federal Rule of Civil Procedure 15*.

ORDER
PAGE - 5

Nevada statute, entitled "Continuation of company after dissolution for winding up of affairs," is nearly identical in language to the Florida statute above, and itself makes clear that it is different than a statute of limitations:

> 1. The dissolution of a limited-liability company does not impair any remedy or cause of action available to or against it or its managers or members commenced, within 2 years after the effective date of the articles of dissolution, with respect to any remedy or cause of action as to which the plaintiff learns, or in the exercise of reasonable diligence should have learned of, the underlying facts on or before the date of dissolution, or within 3 years after the date of dissolution with respect to any other remedy or cause of action. Any such remedy or cause of action not commenced within the applicable period is barred. A dissolved company continues as a company for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or nature by or against it and of enabling it gradually to settle and close its business, to collect and discharge its obligations, to dispose of and convey its property, and to distribute its assets, but not for the purpose of continuing the business for which it was established.
>
> 2. Nothing in this section shall be so construed as to lengthen any shorter statute of limitations otherwise applicable provided that no provision of this chapter or other specific statute has the effect of applying any statute of limitations that is longer than provided in this section with respect to any such remedy or cause of action. Nothing in this section shall be construed to create any remedy or cause of action available to or against the company or its managers or members.

NRS § 86.505. Likewise, Nevada courts have recognized the statute as a "winding up" statute, allowing a cause of action to proceed even after a company has dissolved. *See AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 585-89, 245 P.3d 1190 (2010). Thus, the Court is persuaded that the Nevada statute is one of "prolongation" rather than one of limitation and therefore the general rule that the SEC is not subject to state statutes of limitation is not applicable.

Plaintiff next argues that if it is subject to a state statute, then it is Washington law that applies rather than Nevada law. Dkt. #69 at 17. Under Washington law, Plaintiff would have three years to file its claims against Defendants, one year longer than under the Nevada statute.

ORDER
PAGE - 6

*Id.* The Court agrees with Plaintiff that it should first look to Washington law. Indeed, this Court has recently explained that "[u]nder Federal Rule of Civil Procedure 17(b)(3) . . . the court looks to the law of the state in which the district court is located to determine the capacity of an LLC to sue and be sued." *Spesock v. U.S. Bank. NA*, 2018 U.S. Dist. LEXIS 29636, *5, fn. 2 (W.D. Wash. Feb. 23, 2018) (citations omitted). However, the Court disagrees with Plaintiff's presentation of the applicable Washington statute.

Plaintiff relies on RCW 25.15.309(1), which allows claims to be brought within three years of dissolution. Dkt. #69 at 17. Yet, Plaintiff fails to acknowledge that the statute does not apply to foreign corporations like Defendant Lidingo. By its own terms, RCW 25.15.309 applies to limited liability companies that have filed a certificate of dissolution with the secretary of state of Washington. RCW 25.15.309(1). The parties do not dispute that Defendant Lidingo, a foreign company, filed its certificate in Nevada. More importantly, RCW 25.15.316 provides that "[a] foreign limited liability company registered to do business in this state is subject to RCW 23.95.500 relating to the effect of registration and the governing law for registered foreign limited liability companies." RCW 23.95.500(1) in turn provides, "[t]his chapter does not authorize this state to regulate the organization or internal affair of a foreign entity registered to do business in this state, <u>or govern the liability that a person has as an interest holder or governor for a debt, obligation, or other liability of the foreign entity</u>." (emphasis added). Accordingly, the Court agrees with Defendants that RCW 25.15.309 is not applicable, and the Court must look to Nevada law to determine Defendants' capacity to be sued.[2] Because Plaintiff did not file its claims

---

[2] The predecessor statute to RCW 25.15.316, also entitled "Law governing," explicitly provided that "[t]he laws of the state . . . under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its members and managers." RCW 25.15.310(1)(a), repealed by 2015 c 188 § 108(59), effective January 1, 2016. The Court's interpretation of the current statute is consistent with the intent that liability of a foreign corporation be governed by the laws of the state under which the company was organized.

ORDER
PAGE - 7

against Defendant Lidingo within two years of its dissolution, those claims are now barred, and Defendant Lidingo is dismissed from this action.

Finally, Defendants argue that the claims against the individual Defendants are also time-barred pursuant to NRS § 86.505, because Defendant Bjorlin was a member and manager of Lidingo, and because Defendant Hodge "acted as a member" of Lidingo. Dkt. #66 at 11. Defendant Nichols argues that it "would be incongruous to allow a claim against a mere employee of the corporation" to survive. Dkt. #68 at 2-3. Plaintiff responds that even if the Nevada statute bars its claims against Defendant Lidingo, the statute would not bar its claims against Defendants Bjorlin, Hodge or Nichols. Dkt. #69 at 18. The Court agrees with Plaintiff in part.

NRS § 86.505 precludes Plaintiff from seeking remedies from or pursuing causes of action against the dissolved LLC's "managers or members." NRS § 86.505(1). "'Manager' means a person, or one of several persons, designated in or selected pursuant to the articles of organization or operating agreement of a limited-liability company to manage the company." NRS § 86.071. "'Member' means the owner of a member's interest in a limited-liability company or a noneconomic member." NRS § 86.081. "'Member's interest' means a share of the economic interests in a limited-liability company, including profits, losses and distributions of assets." NRS § 86.091. "'Noneconomic member' means a member of a limited-liability company who:

1. Does not own a member's interest in the company;

2. Does not have an obligation to contribute capital to the company;

3. Does not have a right to participate in or receive distributions of profits of the company or an obligation to contribute to the losses of the company; and

ORDER
PAGE - 8

> 4. May have voting rights and other rights and privileges given to noneconomic members of the company by the articles of organization or operating agreement.

NRS § 86.095. Under these definitions, only Defendant Bjorlin was a member or manager of Lidingo, and Defendants do not assert otherwise. Thus, the Court dismisses all claims against Defendant Bjorlin that are solely derivative of the claims against Lidingo.

However, the Court will not dismiss the claims against Defendants Hodge and Nichols as time-barred, as they are admittedly not members or managers of Lidingo, and they present no legal authority demonstrating that the Nevada statute would preclude Plaintiff's claims against them. Moreover, those claims that are not solely derivative of the claims against Lidingo are not dismissed against Defendant Bjorlin as time-barred.

**C. Adequacy of Pleadings**

To the extent that Plaintiff's claims are not time-barred, Defendants argue that Plaintiff fails to adequately plead certain causes of action against them.[3] The Court addresses each argument, in turn, below.

*1. Count V*

Relying on *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, S. Ct. 2296, 1890 L. Ed.2d 165 (2011), the Lidingo Defendants argue that Count V for fraud in violation of Section 10(b) and Rule 10b-5(b) should be dismissed against Defendant Hodge because he is not alleged to be the "maker" of the statements at issue in this matter. Dkt. #66 at 11-13. Defendant Nichols also moves for dismissal of this claim against him for the same reason. Dkt. #68 at 8. Specifically, the Lidingo Defendants assert that Count V should be dismissed against Defendant Hodge because the Complaint is premised on the allegation that persons other than

---

[3] The Court addresses only the claims alleged against the individual Defendants that are not time-barred.

ORDER
PAGE - 9

Mr. Hodge wrote the subject articles. Dkt. # 66 at 12. Defendant Nichols asserts that the claim should be dismissed against him because he was not the person with ultimate authority for the statements being made in the articles he wrote. Dkt. #68 at 8.

*Janus*, *supra*, limited the scope of liability under Section 10(b) to only those who "make" false and/or misleading statements. The Supreme Court explained:

> For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it. Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right. One who prepares or publishes a statement on behalf of another is not its maker. And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by -- and only by -- the party to whom it is attributed. This rule might best be exemplified by the relationship between a speechwriter and a speaker. Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it. And it is the speaker who takes credit -- or blame -- for what is ultimately said.

564 U.S. at 142-43.

Under Count V of the Complaint, Plaintiff alleges:

> 115. Lidingo, Hodge, Nichols and Cassano directly and indirectly, by use of any means or instrumentality of interstate commerce, or of the mails, knowingly, or recklessly made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading in connection with the purchase or sale of any security.
>
> 116. By reason of the foregoing, Lidingo, Hodge, Nichols and Cassano violated, and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) and Rule 10b-5(b) of the Exchange Act, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b).

Dkt. #1 at ¶¶ 115-116. Defendant Hodge asserts that nowhere in the Complaint is it alleged that he wrote any of the articles, and Defendant Nichols asserts that he did not have the ultimate authority over the statements made in the articles. Thus, they assert they cannot be "makers" of

ORDER
PAGE - 10

the statements at issue and *Janus* requires that Claim V be dismissed against them. The Court disagrees.

The statements at issue in this case are the omissions of, or misrepresentation as to, whether the author of published articles was being compensated for writing the article. Dkt. #1 at ¶ 1. The Complaint alleges that both Defendants Hodge and Nichols published articles under their own names and under pseudonyms on third-party websites. *See* Dkt. #1 at ¶ ¶ 32, 47-50, and 54-57. Further, the Complaint alleges that the person submitting the article for publication, in some instances Mr. Hodge or Mr. Nichols, logged into Seeking Alpha (a third-party website) and clicked the box falsely identifying the articles as non-compensated, thereby creating the alleged misstatement. Dkt. #1 at ¶ 20. Thus, the Court agrees with Plaintiff that in those instances Mr. Hodge and Mr. Nichols were the persons in control of making the misrepresentation and *Janus* does not preclude Claim V against Defendant Hodge or Defendant Nichols at this stage of the proceedings. *See* Dkt. #69 at 21.

Defendant Nichols also moves to dismiss Count V against him on the basis that Plaintiff failed to adequately plead fraudulent intent and scienter with particularity. Dkt. #68 at 3-7. Defendant Nichols argues that Plaintiff is required to plead scienter to satisfy the elements of its claims, but has "failed to provide any example of scienter on the part of Nichols, that he knew he was perpetrating a fraud or was materially omitting any piece of information." Dkt. #68 at 5. Thus, Defendant Nichols asserts that Plaintiff fails to meet the stringent requirements for fraud claims under Federal Rules of Civil Procedure 9(b). Dkt. #68 at 3-7.

As an initial matter, the Court notes that Plaintiff is subject only to Fed. R. Civ. P. 9(b), which provides that scienter may be averred generally, rather than to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which imposes a heightened pleading standard in

ORDER
PAGE - 11

private cases. *SEC v. Fuhlendorf*, 2010 WL 11500146, at *4-5 (W.D. Wash. Mar. 19, 2010); *see also SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *21 (C.D. Cal. July 18, 2016) (unlike a private action governed by the PSLRA, which requires a plaintiff to plead facts giving rise to a strong inference of scienter, the SEC is requires only to comply with Fed. R. Civ. P. 9(b), and thus may allege scienter generally); *SEC v. Sells*, 2012 WL 3242551, at *8 (N.D. Cal. Aug. 10, 2012) (same); *SEC v. PCS Edventures!.com, Inc.*, 2011 WL 337895, at *3 (D. Id. Jan 27, 2011) (same); *SEC v. Mozilo*, 2009 WL 3807124, at *14 (C.D. Cal. Nov. 3, 2009) (same). Thus, the cases cited by Defendant Nichols examining the heightened PSLRA pleading standard are not applicable to the instant matter.

Under Rule 9(b), Plaintiff has met the standard for pleading Mr. Nichols' scienter and fraudulent intent. Plaintiff alleges that, despite having been paid a salary by Lidingo, and sometimes on a per-article basis, Mr. Nichols nonetheless did not disclose that he had been paid or the amount he was paid in order to circumvent Seeking Alpha's policies. Dkt. #1 at ¶ 55 and Appx. A. Plaintiff also alleges that Mr. Nichols had to specifically select and then click on the button that said he was not receiving compensation for the articles when, in fact, he was. Dkt. #1 at ¶ 20. Further, Plaintiff alleges that Mr. Nichols ghost-wrote articles which Lidingo then published using various pseudonyms, and strategized with Ms. Bjorlin and Mr. Hodge about doing this on a broader scale once the investing public started to suspect that the same writer(s) were behind the more frequently-used pseudonyms. Dkt. #1 at ¶ 58. Further, Plaintiff alleges that he published his articles with the end-goal of moving the issuer's stock price and, on at least two occasions, traded in the shares of issuers he wrote about. Dkt. #1 at ¶¶ 59-60. Accordingly, the Court will not dismiss Count V against Mr. Nichols.

## 2. Counts IV and VI

Defendants next move to dismiss Counts IV and VI, which allege scheme liability under subsections (a) and (c) of Rule 10b-5. Dkts. #66 at 13-14 and #68 at 8-9. The Lidingo Defendants argue that Plaintiff is improperly attempting to impose primary liability for a scheme based upon an alleged false statement when the Defendants did not "make" the statement, which would render the *Janus* holding meaningless. Dkt. #66 at 13-14. The Court is not persuaded.

Under Rule 10b-5(a) or (c), a defendant who uses a "device, scheme, or artifice to defraud," or who engages in "any act, practice, or course of business which operates or would operate as a fraud or deceit," may be liable for securities fraud. 17 C.F.R. § 240, Rule 10b-5. By contrast, "[o]missions are generally actionable under Rule 10b-5(b) . . . [and] stem from the failure to disclose accurate information relating to the value of a security where one has a duty to disclose it." *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 940 (9th Cir. 2009) (citing *Paracor Fin. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996)). Courts have generally held that "[a] Rule 10b-5(a) and/or (c) claim cannot be premised on the alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim." *Lautenberg Found. v. Madoff*, 2009 U.S. Dist. LEXIS 82084, 2009 WL 2928913, at *12 (D.N.J. Sept. 9, 2009); *see also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) ("[W]here the sole basis for such claims is alleged misrepresentations or omissions, plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c)."). In *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011), the Ninth Circuit Court of Appeals confirmed that holding:

> Although we have not squarely addressed the issue of whether allegations underpinning a Rule 10b-5(b) omissions claim may be recast as Rule 10b-5(a) or (c) scheme liability claim, in *Desai* we suggested, in accord with other courts, that it is not permissible. 573 F.3d at 941. In so holding, we

ORDER
PAGE - 13

emphasized the importance of maintaining a distinction among the various Rule 10b-5 claims from one another, writing that the lines dividing the different claims are [] "carefully maintained" and are "well-established." *Id.*

We now affirm that holding and expressly extend it to the current situation. A defendant may only be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c) **when the scheme also encompasses conduct beyond those misrepresentations or omissions**. *See S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 359 (D.N.J. 2009); *S.E.C. v. Patel*, 2009 U.S. Dist. LEXIS 90558, 2009 WL [*1058] 3151143, at *6-7 (D.N.H. Sept. 30, 2009); *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 2006 U.S. Dist. LEXIS 16612, 2006 WL 469468, at *21 (S.D. Ohio Feb. 27, 2006) (holding theory of recovery that "merely repeats the allegations made in support of . . . misrepresentation and omission claim" is not a valid claim under Rule 10b-5(a) or (c)); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).

*WPP Lux. Gamma Three Sarl*, 655 F.3d at 1057-58 (emphasis added).

In Counts IV and VI, Plaintiff generally pleads a scheme to defraud in violation of Rule 10b-5(a) and (c). Dkt. #1 at ¶¶ 112-113 and 118-119. However, it alleges facts in support of these Counts that go beyond the alleged misrepresentations. For example, Plaintiff alleges that Ms. Bjorlin, with her friend Manish Singh, located and entered into contracts with issuers to provide promotional services that involved the publication of bullish articles on investment websites in a manner that disguised the issuer's (and Lidingo's) relationship to the articles. Dkt. #1 at ¶¶ 4, 8, 25-32 and Appx. Plaintiff further alleges that Ms. Bjorlin and Mr. Hodge screened and hired only writers who agreed not to disclose that they were compensated. Dkt. #1 at ¶¶ 33-38, 40, 51, 66-68, 76 and 87. In addition, Plaintiff alleges that, to create the deceptive appearance that many high quality writers were interested in and covering Lidingo's issuer-clients, Mr. Hodge and Mr. Nichols created fake aliases with fake credentials under which approximately 140 of the 400 articles were published. Dkt. #1 at ¶¶ 11, 21, 31-32, 42, 45-46, 48, 50, 57-58, 75, 77, 79, 82, 85, 87, 89, 91, 93 and 96-97. Plaintiff also alleges that Ms. Bjorlin had a secret side agreement with at least one CEO about stock price goals, and sought and sometimes obtained,

ORDER
PAGE - 14

bonuses and stock option grants when Lidingo reached certain goals. Dkt. #1 at ¶¶ 80-81, 83-86 and 89. Finally, Plaintiff alleges that, on at least two occasions, Mr. Nichols also engaged in scalping activity wherein he purchased issuer stock just prior to publishing an article about the issuer, then sold the stock at a profit soon after his article was published, which was contrary to the advice he gave in his articles advocating holding for the long-term. Dkt. #1 at ¶¶ 59-60. The Court finds these allegations adequate to support Counts IV and VI at this stage of the proceedings.

Defendant Nichols also moves to dismiss Counts IV and IV against him on the bases that Plaintiff fails to plead scienter and fraudulent intent with particularity, and fails to adequately allege a scheme under Rule 10-b-5(a) or 10b-5(c) and Section 17(a)(1). Dkt. #68 at 3-7 and 8-9. For the same reasons stated above, the Court finds that Plaintiff has adequately plead scienter and fraudulent intent. *See* Sect. C.*1*., *supra*. Likewise, the Court has already determined that Plaintiff has adequately pled facts supporting scheme liability. Therefore, the Court will not dismiss Counts IV and VI against Mr. Nichols.

3. *Counts I-III*

The Lidingo Defendants next move to dismiss Counts I-III on the basis that the *Janus* rule should preclude them. Dkt. #66 at 15-16. The Court is not persuaded. As other District Courts in the Ninth Circuit have held, *Janus* applies only to subsection (b) of Rule 10b-5, not subsections (a) or (c):

> First, *Janus* considered the meaning of language that appears in Rule 10b-5 but does *not* appear in Section 17(a). Rule 10b-5 provides for liability for any individuals who "make[s] any untrue statement of a material fact . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5. But Section 17(a) requires only that an individual have "obtain[ed] money or property by means of any untrue statement of a material fact" in the offer or sale of securities. 15 U.S.C. § 77q(a)(2). There is no requirement that an individual have "made" any statement to be held liable under Section 17(a).

ORDER
PAGE - 15

*Janus*'s holding, by contrast, turns entirely on the question whether a defendant "made" a statement under the meaning of Rule 10b-5. It therefore makes little sense to apply *Janus* to Section 17(a), which does not contain the term *Janus* construed at length. *See S.E.C. v. Mercury Interactive, LLC*, No. 5:07-cv-02822-WHA, 2011 U.S. Dist. LEXIS 134580, 2011 WL 5871020, at *3 (N.D. Cal. Nov. 22, 2011) ("*Janus* may not be extended to statutes lacking the very language that *Janus* constructed"); *see also S.E.C. v. Sentinel Mgmt. Grp.*, No 07 C 4684, 2012 U.S. Dist. LEXIS 57579, 2012 WL 1079961, at *14 (N.D. Ill. Mar. 30, 2012) ("The *Janus* decision was largely based on the Supreme Court's interpretation of the word 'make,' which is notably absent from Section 17(a).").

Second, in restricting Rule 10b-5's application to defendants who were actually responsible for false statements, the *Janus* Court was clearly guided by the fact that Rule 10b-5 only *impliedly* authorizes a private right of action, and such implied rights should be construed narrowly. It noted that "[c]oncerns with the judicial creation of a private cause of action caution against its expansion," *Janus*, 564 U.S. at 142 (quoting *Stoneride Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165, 128 S. Ct. 761, 169 L. Ed. 2d 627 (2008)), and that it was "mindful that [it] must give narrow dimensions . . . to a right of action Congress did not authorize when it first enacted [the Exchange Act] and did not expand when it revisited the law," *id. See also id.* at 144 ("Our holding also accords with the narrow scope that we must give the private right of action."). This same concern does not exist in the context of Section 17(a), because "no private right of action lies" under that section, *In re Washington Public Power Supply Sys. Securities Litig.*, 823 F.2d 1349, 1358 (9th Cir. 1987). *Janus*'s pronounced caution in construing Rule 10b-5's implied private right of action therefore has no bearing on Section 17(a). *See S.E.C. v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015) (holding that the "concern regarding the expansion of a judicially-created private cause of action" present in *Janus* was not present in the Section 17(a) context); *S.E.C. v. Daifotis*, No. C 11-00137 WHA, 2011 U.S. Dist. LEXIS 83872, 2011 WL 3295139, at *6 (N.D. Cal. Aug. 1, 2011) ("*Janus*'s stringent reading of the word 'make' followed from the Court's prior decisions limiting the scope of implied rights of action under Rule 10b-5," and "[t]he same rationale does not apply in the context of Section 17(a).").

The Court therefore concludes that *Janus* does not apply to causes of action brought by the SEC under Section 17(a), and notes that it is in accord with a very significant majority of courts to have considered the question. *See S.E.C. v. Benger*, 931 F. Supp. 2d 904, 905-06 (N.D. Ill. 2013) ("[T]he vast majority of courts dealing with the question of whether *Janus* also applies to claims under Section 17 have answered that question with a resounding 'no;'"); *Big Apple Consulting* USA, 783 F.3d at 797 (declining to "supplant the language of § 17(a)(2) with words taken from another authority"); *Daifotis*, 2011 U.S. Dist. LEXIS 83872, 2011 WL 3295139, at *65 ("*Janus*

> does not apply to claims brought under Section 17(a)."); *Mercury Interactive*, 2011 U.S. Dist. LEXIS 134580, 2011 WL 5871020, at *3 (holding that *Janus* does not apply to Section 17(a) claims); *S.E.C. v. Sells*, No. C 11-4941 CW, 2012 U.S. Dist. LEXIS 112450, 2012 WL 3242551, at *7 (N.D. Cal. Aug. 10, 2012) ("*Janus* does not apply to claims premised on § 17(a)."); *S.E.C. v. Farmer*, Civil Action No. 4:14-CV-2345, 2015 U.S. Dist. LEXIS 136702, 2015 WL 5838867, at *7 (S.D. Tex. Oct. 7, 2015) ("The vast majority of courts that have considered whether *Janus* applies to claims under Section 17(a)(2) have concluded that it does not.") (collecting cases); *but see SEC v. Kelly*, 817 F. Supp. 2d 340, 345 (S.D.N.Y. 2011) (noting that "numerous courts have held that the elements of a claim under Section 17(a) are 'essentially the same' as those for claims under Rule 10b-5" and applying *Janus* to Section 17(a)); *S.E.C. v. Perry*, No. CV-11-1309 R, 2012 U.S. Dist. LEXIS 76018, 2012 WL 1959566, at *8 (C.D. Cal. May 31, 2012) (holding, without significant analysis, that *Janus* applies to § 17(a) claims and citing *Kelly* and two pre-*Janus* cases for support). . . .

*SEC v. Liu*, 2016 U.S. Dist. LEXIS 91078, *25-28 (C.D. Cal. July 11, 2016) (emphasis in original). The Court agrees with this reasoning and declines to extend *Janus* to Plaintiff's Rule 17(a) claims.

Defendant Nichols also moves to dismiss Count I against him on the basis that Plaintiff failed to adequately plead fraudulent intent and scienter with particularity and that Plaintiff failed to adequately allege a scheme under Rule 10-b-5(a) or 10b-5(c) and Section 17(a)(1). Dkt. #68 at 3-7 and 8-9. Further, he moves to dismiss Count II for failure to state a claim upon which relief could be granted. Dkt. #68 at 10-12. For the same reasons stated above, the Court finds that Plaintiff has adequately plead scienter and fraudulent intent. *See* Sect. C.*1*., *supra*. Likewise, the Court has already determined that Plaintiff has adequately pled facts supporting scheme liability. *See* Section C.*2.*, *supra*. Therefore, the Court will not dismiss Count I against Defendant Nichols.

With respect to Defendant Nichols' argument that Claim II should be dismissed against him because he did not directly receive money for omitting or misrepresenting any compensation he received, the Court is not persuaded. *See* Dkt. #68 at 11. As Defendant Nichols notes, there

is no legal authority in the Ninth Circuit on point, and the Court finds the *Daifotis* case inapposite. *Id.* Accordingly, the Court will not dismiss Count II against Mr. Nichols.

   4. Counts XV and XVI

The Lidingo Defendants next argue that Count XV against Ms. Bjorlin, which alleges control person liability pursuant to Section 20(a), must be dismissed because Plaintiff fails to plead a primary violation of Section 10(b). Dkt. #66 at 17. They further argue that Plaintiff's alternate claim against Ms. Bjorlin in Count XVI pursuant to Section 20(b), must also be dismissed if the Court determines that the SEC must proceed under Section 20(a). Dkt. #66 at 17-18. This Court has already determined that certain claims against Lidingo and Ms. Bjorlin are time-barred, and the Court finds Counts XV and XVI against Ms. Bjorlin to be among those claims. Accordingly, Counts XV and XVI will be dismissed.

   5. Count XIV

Finally, Defendant Nichols argues that Count XIV against him for aiding and abetting must be dismissed. Dkt. #68 at 9-10. However, the Court finds that Plaintiff has adequately pled "substantial assistance" in support of its claim. Dkt. #1 at ¶¶ 11, 20, 21, and 54-60. Accordingly, the Court will not dismiss Count XIV against him.

**D. Leave to Amend**

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). In this case, the Court concludes that granting leave to amend

ORDER
PAGE - 18

the dismissed claims would be futile given that Plaintiff can no longer maintain claims against these Defendants under the applicable Nevada law.

## IV.     CONCLUSION

Having reviewed Defendants' motions to dismiss, Plaintiff's opposition thereto and the replies in support thereof, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) Defendants' Motions to Dismiss (Dkts. #66 and #68) are GRANTED IN PART and DENIED IN PART as discussed above. Lidingo Holdings, LLC, is DISMISSED as a Defendant to this action.

2) Due to the length and complexity of the Complaint in this case, **no later than fourteen (14) days from the date of this Order,** Plaintiff shall file an Amended Complaint in conformance with the rulings in this Order.

DATED this 11th day of May 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE